**E-Filed 9/29/05**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARIA VENTURA, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>1ST FINANCIAL BANK USA, et al.,<br><br>                    Defendants. | Case Number C 03-4515 JF (RS)<br><br>ORDER GRANTING DEFENDANTS' PETITION TO COMPEL ARBITRATION AND MOTION FOR STAY OF LITIGATION PENDING ARBITRATION<br><br>[Doc. No. 74] |

   Before the Court are Defendants' petition to compel arbitration and motion to stay litigation pending arbitration (collectively "the petition"). The petition was filed on December 15, 2003. The Court deferred consideration of the petition pending disposition of Plaintiff's motion for leave to permit discovery relevant to the issue of arbitrability. The Court heard Plaintiff's discovery motion on May 3, 2004 and on July 14, 2004 issued an order granting leave to conduct limited discovery.[1]  Following completion of this discovery, Defendants re-noticed

---

[1] The order of July 14, 2004 also denied without prejudice Defendants' motion to dismiss Plaintiff's operative second amended complaint. The Court concluded that it would be inappropriate to reach the merits of Defendants' motion to dismiss unless and until the arbitration clause is found to be unenforceable.

1   their petition and set it for hearing on February 11, 2005.  The Court has considered the briefing
2   of the parties as well as the oral arguments presented at the hearing.  For the reasons discussed
3   below, the petition will be granted.

## I. BACKGROUND

Plaintiff Maria Ventura ("Ventura"), a California resident, obtained a Visa card from Defendant 1st Financial Bank USA ("1st Financial"), which has its principal place of business in Sioux Falls, South Dakota.  Ventura failed to make the required payments on the Visa card.  1st Financial sent Ventura correspondence several times between August and November 2002. While some of the correspondence was in the form of straightforward letters referencing Ventura's account, other correspondence was in the form of invitations and holiday cards making special offers of credit and cash savings.

Ventura asserts that the correspondence that looked like invitations and holiday cards did not identify 1st Financial as the sender and constituted a "clandestine and deceptive campaign to trick Ms. Ventura into calling Defendant so Defendant could then demand payment verbally." Second Am'd Complt ("SAC") at ¶ 16.  Ventura alleges that when she responded to the correspondence by calling the telephone number provided, the person on the other end of the line stated that the special offer about which she was inquiring had expired, attempted to pressure her into making a payment and attempted to extract information as to where she was employed.  *Id*. at ¶¶ 32-35. Following this telephonic exchange, 1st Financial sent Ventura another demand letter enclosed in an envelope bearing the following phrase in red capitalized letters:  WHAT THE HECK?  *Id*. at ¶ 37.

Despite the fact that the credit card agreement contains a binding arbitration provision, Ventura filed the instant putative class action in this Court against 1st Financial and two of its employees on October 6, 2003.  Her operative second amended complaint alleges that Defendants' debt-collection practices violate the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, California's Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 and California's Unfair Practices Act, Cal. Bus. & Prof. Code § 17200.  Ventura contends that the contractual arbitration provision is unenforceable on the grounds that it is procedurally and

2

substantively unconscionable, that there is a lack of mutuality and that the credit card agreement was a contract of adhesion.

## II. DISCUSSION

The parties' dispute is governed by the Federal Arbitration Act ("FAA"), which applies to all written contracts involving interstate or foreign commerce and provides in relevant part that arbitration agreements contained within such contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  When an arbitration provision exists, the role of the federal court thus is limited to determining (1) whether the arbitration provision is valid and enforceable and, if so, (2) whether the provision encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnositc Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

There is no question that the arbitration provision in the parties' credit card agreement encompasses the instant dispute. That provision, which states in relevant part as follows, is extremely broad:

> ARBITRATION/NO PUNITIVE DAMAGES:  Any controversy or claim arising out of or in any way relating to this credit card agreement between you or an authorized user and the Bank or its employees, officers, directors, attorneys and other representatives and agents, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association with the sole exception of collection matters, activities or actions by the Bank relating to your account.

The question before the Court is whether the provision is valid and enforceable.

As discussed above, the presumption is that the provision is valid and enforceable. 9 U.S.C. § 2; *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1257 (9th Cir. 2005).  The FAA was enacted to overcome longstanding judicial reluctance to enforce agreements to arbitrate. *Al-Safin*, 394 F.3d at 1257; *Bradley v. Harris Research, Inc.*, 275 F.3d 884, 888 (9th Cir. 2001).  It "creates a body of federal and substantive law of arbitrability, enforceable in both state and federal courts and pre-empting any state laws or policies to the contrary." *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 936 (9th Cir. 2001) (internal quotation marks and citations omitted).  As a result, state laws hostile to arbitration agreements have been held invalid on the ground that such laws frustrate congressional intent to place arbitration agreements on the

same footing as other contracts. *Bradley*, 275 F.3d at 889.

State law is not entirely displaced from FAA analysis, however. "[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability and enforceability of contracts generally." *Ticknor*, 265 F.3d at 937 (internal quotation marks and citation omitted). In other words, state contract defenses may be applied to contracts governed by the FAA so long as those defenses are applicable to all contracts generally rather than arbitration agreements in particular. *Id.*

The question is which state's contract law should be applied in determining the validity and enforceability of the arbitration provision at issue. The credit card agreement contains a choice of law provision stating that any disputes will be governed by the law of South Dakota. The Court's order of July 14, 2004 referenced this provision and discussed South Dakota law in some detail in analyzing the propriety of Ventura's discovery requests. However, the parties cite both South Dakota law and California law. The choice of law determination is particularly important in this case, because California law appears to be far more favorable to Ventura than South Dakota law.

The main thrust of Ventura's challenge to the arbitration provision is that it effectively bars her from proceeding with classwide arbitration in this case. As stated above, the arbitration provision specifies application of the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). It is undisputed that under those rules Ventura could arbitrate her individual claims for a total cost to her of $125.[2] 1st Financial has offered to pay this $125 fee on Ventura's behalf. Ventura does not wish to proceed on her individual claims, however, and it is undisputed that if Ventura elects to pursue classwide arbitration the parties would have to pay as much as $60,000 in fees for the first two of four phases of such arbitration. Ventura thus would be required to pay tens of thousands of dollars in arbitrators' fees if she proceeds as a class

---

[2] In order to expedite resolution of Defendants' petition to compel arbitration and discovery related thereto, the parties entered into a stipulation setting forth the fees that would be incurred if Ventura were to arbitrate only her individual claims, and if she were to pursue a classwide arbitration. Magistrate Judge Richard Seeborg approved the stipulation on November 17, 2004.

4

1  representative. Ventura argues that the AAA fees for classwide arbitration are so prohibitive as
2  to effectively bar credit card consumers from bringing class claims, and that such a bar on class
3  claims is unconscionable.

4  Ventura's unconscionability defense might prevail under California law. The California
5  Supreme Court recently found unconscionable a credit card agreement's arbitration provision
6  prohibiting classwide arbitration. *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005). The
7  court concluded that "at least under some circumstances, the law in California is that class action
8  waivers in consumer contracts of adhesion are unenforceable, whether the consumer is being
9  asked to waive the right to class action litigation or the right to classwide arbitration." *Id.* at 153.
10 The court set forth an exhaustive discussion of California case law and statutory law evidencing a
11 strong public policy against class action waivers and concluded that California law on this point
12 is not preempted by the FAA when the class action waiver is set forth in an arbitration provision.
13 *Id.* at 156-163. The court reasoned that "the principle that class action waivers are, under certain
14 circumstances, unconscionable as unlawfully exculpatory is a principle of California law that
15 does not specifically apply to arbitration agreements, but to contracts generally." *Id.* at 165. The
16 court remanded for further proceedings, however, because it was not clear that California law
17 applied to the dispute. *Id.* at 173. The Court noted that the credit card agreement contained a
18 choice of law provision specifying the law of the defendant bank's home state, Delaware, and
19 concluded that the lower court should conduct a choice of law analysis to determine what state's
20 law governed the unconscionability analysis. *Id.*

21 The instant arbitration provision does not fall squarely within the holding of *Discover
22 Bank*, because in that case the arbitration provision contained an outright bar to classwide
23 arbitration while in the instant case there is no such outright bar, but merely an arguable *de facto*
24 financial bar. This Court need not reach the question of whether *Discover Bank* would apply to
25 the instant arbitration provision, however, unless and until the Court concludes that the parties'
26 contractual choice of South Dakota law should not be honored. In other words, this Court must
27 perform the choice of law analysis for which the California Supreme Court remanded in *Discover
28 Bank*.

5

If South Dakota law applies, Ventura's contract defenses would not prevail. The parties have not cited, and the Court has not discovered, any South Dakota case law or statutory law mirroring *Discover Bank* or the authorities discussed therein. While South Dakota law does provide that arbitration agreements are subject to standard contract defenses such as unconscionability, South Dakota also has a very strong public policy favoring enforcement of contractual arbitration provisions. *See, e.g.*, *Thunderstik Lodge, Inc. v. Reuer*, 585 N.W.2d 819, 821 (S.D. 1998) (stating that "[i]t is an overriding policy that arbitration will be favored, when provided for in a contract provision, as a means to the resolution of disputes."). In light of this policy, and absent any citation to authority demonstrating that enforcement of the arbitration provision at issue would violate South Dakota policy or otherwise be unlawful under South Dakota law, it appears that resolution of Defendants' petition turns upon the choice of law issue.

The enforceability of a contractual choice of law provision is decided in accordance with the law of the forum state. *Ticknor*, 265 F.3d at 937. California follows the Restatement (Second) of Conflict of Laws § 187(2). *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 464-65 (1992). That section provides as follows:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

In other words, the Court first must determine whether (1) the chosen state has a substantial relationship to the parties or their transaction or (2) there is any other reasonable basis for the parties' choice of law. *Nedlloyd*, 3 Cal.4th at 466. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. *Id.* If either test is met, however, the Court must determine whether the chosen state's law is contrary to a fundamental policy of California. *Id.* If there is no such conflict, the Court will enforce the parties' choice of

6

Case No. C 03-4515 JF (RS)
ORDER GRANTING DEFENDANTS' PETITION TO COMPEL ARBITRATION AND MOTION FOR STAY ETC.
(JFLC2)

law.  If there is a fundamental conflict with California law, the Court must determine whether California has a materially greater interest than the chosen state in the determination of the particular issue.  *Id.*  If California does have a materially greater interest than the chosen state, the choice of law will not be enforced, because in such circumstance the Court will decline to enforce a law contrary to California's fundamental policy.  *Id.*

Clearly, South Dakota has a substantial relationship to the parties and the transaction, because 1st Financial has its principal place of business in South Dakota.  For the reasons discussed above, it appears that South Dakota's law, which would permit enforcement of the arbitration provision in question, arguably is contrary to California's fundamental policy against waiver of class actions.  However, California does not have a materially greater interest in the action than South Dakota.  While California has an interest in protecting the rights of its resident, Ventura, South Dakota has an equal interest in protecting the rights of its resident businesses, such as 1st Financial.  South Dakota has enacted a number of statues explicitly aimed at facilitating the workings of its resident financial institutions.  For example, South Dakota statute expressly authorizes contract formation by an individual's use of a credit card, which is how the contract at issue in this case was formed.  *See* SDCL 54-11-9.  Under these circumstances, the Court cannot say that California's interest in the matter is "materially greater" than that of South Dakota.

Having concluded that the parties' contractual choice of law provision is valid, and that Ventura has failed to demonstrate a viable contract defense[3] to the arbitration provision under

---

[3] The Court's discussion of contract defenses focuses on unconscionability.  Ventura also asserts that the arbitration provision fails for lack of mutuality and that it is void as a contract of adhesion.  Ventura argues that there is a lack of mutuality because while she is required to arbitrate all claims she may have against 1st Financial, 1st Financial is not required to arbitrate debt collection claims it may have against her.  The Court concludes that the exemption of debt collection claims from the arbitration provision does not render the provision unenforceable for lack of mutuality, because debt collection is inherently one-sided and it would not make sense to require a financial institution to arbitrate every time it attempted to collect on an unpaid bill.  In addition, AAA rules permit Ventura to elect to pursue her claims in small claims court and forego the arbitration process.  Ventura argues that the arbitration provision is a contract of adhesion because she was not given an opportunity to negotiate it.  However, as discussed above, South Dakota law expressly permits the formation of credit card contracts when no negotiation is

7

South Dakota law, the Court will grant Defendants' petition.

### III. ORDER

Defendants' petition to compel arbitration and motion to stay litigation pending disposition of arbitration are GRANTED.

DATED: 9/29/05

/s/ electronic signature authorized
_____
JEREMY FOGEL
United States District Judge

---

possible. *See* SDCL 54-11-9.

1  Copies of Order served on:

3  O. Randolph Bragg     rand@horwitzlaw.com, shannon@horwitzlaw.com

4  Kiana K. Moradi , Esq     Kmoradi@reedsmith.com, kbarnacle@reedsmith.com

5  David Sturgeon-Garcia     dsglaw@comcast.net

6  Ronald Wilcox     ronaldwilcox@post.harvard.edu

9

Case No. C 03-4515 JF (RS)
ORDER GRANTING DEFENDANTS' PETITION TO COMPEL ARBITRATION AND MOTION FOR STAY ETC.
(JFLC2)